

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Byron G. Rogers Federal Building, 1961 Stout St., Suite 1700
Denver, CO 80294-1961

DENVER
REGIONAL OFFICE

October 27, 2023

**VIA OVERNIGHT DELIVERY**
Fruit Street Health, P.B.C.
85 Broad Street, 17th Floor
New York, NY 10004

Cogency Global, Inc., Registered Agent
850 New Burton Road Suite 201
Dover, DE 19904

Re: In the Matter of Fruit Street Health, P.B.C., D-4104

Dear Sir or Madam:

    The enclosed subpoena has been issued pursuant to a formal order entered by the United States Securities and Exchange Commission. Pursuant to Rule 8 of the United States Securities and Exchange Commission's Rules Relating to Investigations, 17 C.F.R. § 203.8, I have enclosed a subpoena for documents issued to Fruit Street Health, P.B.C. ("Fruit Street"), in connection with the above-referenced investigation.

    The enclosed subpoena requires Fruit Street to produce documents to the SEC by November 10, 2023. Please deliver the materials to:

    ENF-CPU
    U.S. Securities and Exchange Commission
    14420 Albemarle Point Place, Suite 102
    Chantilly, VA 20151-1750

    For smaller electronic productions under 10MB in size, the materials may be emailed to the following email address: ENF-CPU@sec.gov.

    Please also provide a duplicate copy of any document production cover letters to DwyerJ@sec.gov and EngelhartH@sec.gov. Additionally, please include the SEC matter number and the name of the requesting attorney when responding.

**EXHIBIT 1**

Please carefully read the subpoena attachment, which contains, among other things, important instructions related to the manner of producing documents. In particular, if Fruit Street prefers to send us copies of original documents, **the staff requests that you scan and produce hard copy documents, as well as electronic documents, in an electronic format consistent with the SEC Data Delivery Standards attached hereto. All electronic documents responsive to the subpoena, including all metadata, should also be produced in their native software format**. If you have any questions concerning the production of documents in an electronic format, please contact me as soon as possible and in any event before producing documents. For security reasons, we strongly encourage the encryption of sensitive documents before production.

In your cover letter(s) accompanying the production of responsive documents, please enclose a list briefly describing each item you send. The list should identify the paragraph(s) in the subpoena attachment to which each item responds. Please also state in the cover letter(s) whether you believe Fruit Street has met the obligations of the subpoena by searching carefully and thoroughly for everything called for by the subpoena, and sending it all to us.

A copy of the subpoena should be included with the documents that are produced. Correspondence should reference case number, case name and requesting SEC staff member.

Passwords for documents, files, compressed archives, and encrypted media should be provided separately either via email addressed to ENF-CPU@sec.gov, or in a separate cover letter mailed separately from the data. Password correspondence should reference case number, case name and requesting SEC staff member.

Please also provide a narrative description describing what was done to identify and collect documents responsive to the subpoena. At a minimum, the narrative should describe:

- who searched for documents;
- who reviewed documents found to determine whether they were responsive;
- which custodians were searched;
- what sources were searched (e.g., computer files, CDs, DVDs, thumb drives, flash drives, online storage media, hard copy files, diaries, datebooks, planners, filing cabinets, storage facilities, home offices, work offices, voice mails, home email, webmail, work email, backup tapes or other media);
- what search terms, if any, were employed to identify responsive documents;
- what firms and/or persons, if any, assisted in analyzing the data collected;
- what third parties, if any, were contacted to obtain responsive documents (e.g., phone companies for phone records, brokerage firms for brokerage records); and
- where the original electronic and hardcopy documents are maintained and by whom.

Please note that, in any matter in which enforcement action is ultimately deemed to be warranted, the Division of Enforcement will not recommend any settlement to the Commission unless the party wishing to settle certifies, under penalty of perjury, that all documents responsive to Commission subpoenas and formal and informal document requests in this matter have been produced.

For any Documents that qualify as records of regularly conducted activities under Federal Rule of Evidence 902(11), please complete a business records certification (a sample of which is enclosed) and return it with the production.

Enclosed is a copy of the Commission's Form 1662, entitled "Supplemental Information for Persons Requested to Supply Information Voluntarily or Directed to Supply Information Pursuant to a Commission Subpoena." This form explains how we may use the information that Fruit Street provides to the Commission and has other important information.

This investigation is a non-public, fact-finding inquiry. We are trying to determine whether there have been any violations of the federal securities laws. The investigation does not mean that we have concluded that anyone has violated the law. Also, the investigation does not mean that we have a negative opinion of any person, entity, or security.

If you have any questions or would like to discuss this matter, you may contact me at (303) 844-1024.

Sincerely,

John Dwyer
Senior Counsel
Division of Enforcement
(303) 844-1024
DwyerJ@sec.gov

Enclosures:    Subpoena and Attachment
SEC Form 1662
Data Delivery Standards
Business Records Certification

3



# SUBPOENA

## UNITED STATES OF AMERICA
### SECURITIES AND EXCHANGE COMMISSION

**In the Matter of Fruit Street Health, P.B.C., D-4104**

**To:** Fruit Street Health, P.B.C.
85 Broad Street, 17th Floor
New York, NY 10004

☒ **YOU MUST PRODUCE** everything specified in the Attachment to this subpoena to officers of the Securities and Exchange Commission, at the place, date and time specified below:

ENF-CPU, U.S. Securities and Exchange Commission, 14420 Albemarle Point Place, Suite 102 Chantilly, VA 20151-1750, no later than November 10, 2023.

☐ **YOU MUST TESTIFY** before officers of the Securities and Exchange Commission, at the place, date and time specified below:

**FEDERAL LAW REQUIRES YOU TO COMPLY WITH THIS SUBPOENA.**
If you do not comply with this subpoena, the SEC may bring an action in Federal Court to enforce this subpoena.
Failure to comply with a court order enforcing this subpoena may result in the court imposing a fine, imprisonment, or both.

By: _John Dwyer_ (signature)   Date: October 27, 2023
John Dwyer, Senior Counsel
U.S. Securities and Exchange Commission
Denver Regional Office
1961 Stout Street, Suite 1700
Denver, CO 80294-1961

I am an officer of the U.S. Securities and Exchange Commission authorized to issue subpoenas in this matter. The Securities and Exchange Commission has issued a formal order authorizing this investigation under Section 20(a) of the Securities Act of 1933 and Section 21(a) of the Securities Exchange Act of 1934.

NOTICE TO WITNESS: If you claim a witness fee or mileage, submit this subpoena with the claim voucher.

**SUBPOENA ATTACHMENT FOR FRUIT STREET HEALTH, P.B.C.**
In the Matter of Fruit Street Health, P.B.C., D-4104

October 27, 2023

### Definitions

As used in this subpoena, the words and phrases listed below shall have the following meanings:

1. "Fruit Street Health, P.B.C." means the entity doing business under the name "Fruit Street Health, P.B.C." ("Fruit Street"), including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2. "Person" means a natural person, firm, association, organization, partnership, business, trust, corporation, bank or any other private or public entity.

3. A "Representative" of a Person means any present or former family members, officers, executives, partners, joint-venturers, directors, trustees, employees, consultants, accountants, attorneys, agents, or any other representative acting or purporting to act on behalf of the Person.

4. "Document" shall include, but is not limited to, any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, facsimiles, messages of any type, telephone messages, text messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

5. "Communication" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise) and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

6. "Concerning" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, describing, analyzing or reflecting.

7. An "Agreement" means any actual or contemplated (i) written or oral Agreement; (ii) term or provision of such Agreement; or (iii) amendment of any nature or termination of such Agreement. A request for any Agreement among or between specified parties includes a request for all Documents Concerning (i) any actual or contemplated Agreement among or between such parties, whether or not such Agreement included any other Person; (ii) the drafting or negotiation of any such Agreement; (iii) any actual or contemplated demand, request or application for any such Agreement, and any response thereto; and (iv) any actual or contemplated objection or refusal to enter into any such Agreement, and any response thereto.

8. The term "Reviewed" means examined, assessed, considered, analyzed or evaluated.

9. The term "you" and "your" means the Person to whom or entity to which this subpoena was issued.

10. To the extent necessary to bring within the scope of this this subpoena any information or Documents that might otherwise be construed to be outside its scope:
    a. the word "or" means "and/or";
    b. the word "and" means "and/or";
    c. the functional words "each," "every" "any" and "all" shall each be deemed to include each of the other functional words;
    d. the masculine gender includes the female gender and the female gender includes the masculine gender; and
    e. the singular includes the plural and the plural includes the singular.

11. "Relevant Period" means the time period beginning January 1, 2014, or the earliest time for which records exist, whichever is earlier, and continuing to the present, unless otherwise specified.

## Instructions

1. Unless otherwise specified, this subpoena calls for production of the original Documents and all copies and drafts of same. Documents responsive to this subpoena may be in electronic or paper form. Electronic Documents such as email should be produced in accordance with the attached Document entitled SEC Data Delivery Standards. All responsive electronic Documents, including all metadata, should also be produced in their native software format.

2. For Documents in paper format, you may send the originals, or, if you prefer, you may send copies of the originals. The Commission cannot reimburse you for the copying costs. If you are sending copies, the staff requests that you scan (rather than photocopy) hard copy Documents and produce them in an electronic format consistent with the SEC Data Delivery Standards. Alternatively, you may send us photocopies of the Documents in paper format. If you choose to send copies, you <u>must</u> secure and retain the originals and store them in a safe place. The staff may later request or require that you produce the originals.

3. Whether you scan or photocopy Documents, the copies must be identical to the originals,

        including even faint marks or print. Also, please note that if copies of a Document differ in any way, they are considered separate Documents and you must send each one. For example, if you have two copies of the same letter, but only one of them has handwritten notes on it, you must send both the clean copy and the one with notes.

4. In producing a photocopy of an original Document that contains post-it(s), notation flag(s), or other removable markings or attachments which may conceal all or a portion of the markings contained in the original Document, photocopies of the original Document both with and without the relevant post-it(s), notation flag(s), or removable markings or attachments should be produced.

5. Documents should be produced as they are kept in the ordinary course of business or be organized and labeled to correspond with the categories in this request. In that regard, Documents should be produced in a unitized manner, i.e., delineated with staples or paper clips to identify the Document boundaries.

6. Documents should be labeled with sequential numbering (bates-stamped).

7. You must produce all Documents created during, or Concerning, the period from January 1, 2014, or the earliest time for which records exist, whichever is earlier, to the date of this subpoena, unless otherwise specified.

8. The scope of any given request should not be limited or narrowed based on the fact that it calls for Documents that are responsive to another request.

9. This subpoena covers all Documents in or subject to your possession, custody or control, including all Documents that are not in your immediate possession but that you have the effective ability to obtain, that are responsive, in whole or in part, to any of the individual requests set forth below. If, for any reason – including a claim of attorney-client privilege – you do not produce something called for by the request, you should submit a list of what you are not producing. The list should describe each item separately, noting:

    a. its author(s);
    b. its date;
    c. its subject matter;
    d. the name of the Person who has the item now, or the last Person known to have it;
    e. the names of everyone who ever had the item or a copy of it, and the names of everyone who was told the item's contents;
    f. the basis upon which you are not producing the responsive Document;
    g. the specific request in the subpoena to which the Document relates;
    h. the attorney(s) and the client(s) involved; and
    i. in the case of the work product doctrine, the litigation for which the Document was prepared in anticipation.

10. If Documents responsive to this subpoena no longer exist because they have been lost, discarded, or otherwise destroyed, you should identify such Documents and give the date on which they were lost, discarded or destroyed.

**Documents to be Produced**

1. Documents sufficient to disclose the corporate structure of Fruit Street, including, but not limited to, the date and place of establishment, organization, and, if applicable, incorporation; including:

    a. Organizational charts or similar Documents that identify the names and titles of all Fruit Street employees, or contractors/agents;

2. Documents sufficient to identify all Fruit Street investors by name, address, and telephone number, including:

    a. the amount invested;
    b. the date(s) of investments; and
    c. whether, when, and how much of each investors' principal has been returned to them;

3. For each investor identified in response to Item 2 above, all Documents Concerning Agreements between Fruit Street and the investor and all Documents Concerning terms of investments;

4. For each investor identified in response to Item 2 above, all Documents Concerning the investment or other use of their funds by Fruit Street and the current location of investor funds;

5. All Documents Concerning Communications between Fruit Street and investors or potential investors in Fruit Street, including but not limited to emails, texts, marketing materials, and communications sent through project management services such as Slack or Basecamp;

6. All Documents Concerning Fruit Street's revenue, including all Documents:

    a. Concerning revenue derived from Fruit Street's partnerships with Walgreens, Sharecare Inc. ("Sharecare"), and BCBS health plans—as referenced in Attachment A to Fruit Street's May 12, 2020 Form C filing with the Commission;
    b. setting or tracking internal or external financial targets or expectations for Fruit Street;

7. All Agreements, contracts, or other arrangements Concerning Fruit Street's partners—including but not limited to Sharecare and Walgreens;

8. Documents sufficient to support Fruit Street's "pre-money valuation" of $104,347,242.50 referenced in Attachment A to Fruit Street's May 12, 2020 Form C filing with the Commission;

9. Documents sufficient to support Fruit Street's statement that "[r]evenue tripled in 2019 year over year" in Attachment A to Fruit Street's May 12, 2020 Form C filing with the Commission;

10. Documents sufficient to identify all offerings of securities by Fruit Street, including but not limited to the securities offered in the Form D amendment that Fruit Street filed with the Commission on September 28, 2023. For each offering, produce documents sufficient to identify:
    a. the offering documents used for each offering, including any Agreements, prospectus, placement memorandum, or presentations made or provided to potential investors;
    b. exemptions from registration as required by Section 5 of the Securities Act of 1933 or safe-harbors, if any, relied upon by Fruit Street;
    c. how investors and potential investors were solicited, identified and/or contacted by Fruit Street, either directly or indirectly; and
    d. how Fruit Street, either directly or indirectly, verified the status of accredited investors.